IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

CIVIL ACTION NO.: 5:19-cv-447-BR

| | |
|---|---|
| **ROBERT JACKSON**, <br><br> Plaintiff, <br><br> v. <br><br> **RAND MANUFACTURING INC.**, <br><br> Defendant. | **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Robert Jackson, by and through the undersigned counsel, submits the instant Memorandum of Law in response to the Motion for Summary Judgment by Defendant, Rand Manufacturing, Inc.

The motion must be denied. Notwithstanding Defendant's arguments to the contrary, the evidence developed in this case clearly establishes that when he was injured, Plaintiff was putting Defendant's product to its anticipated use; that, given Defendant's inadequate warnings, Plaintiff had no way of knowing he was in danger and that the product was unreasonably dangerous. In any event, Louisiana case law mandates that questions of whether a use was reasonably anticipated, whether a product was unreasonably dangerous, and whether its warnings were adequate are to be determined by the trier of fact, not by the court on summary judgment.

**I.      SUMMARY OF THE NATURE OF THE CASE**

This case involves a claim under the Louisiana Products Liability Act, La. R.S. § 9:2800.51, *et seq.*, for damages against Defendant, Rand Manufacturing, Inc. Defendant manufactured and sold a "final roller," which injured Plaintiff on October 19, 2018 at Plaintiff's

workplace in West Monroe, Louisiana.  The final roller, a type of press resembling a giant clothes wringer on an old wringer-washer, was used by Plaintiff's employer, Rogers Manufacturing Corporation, to assemble wooden trusses.   Discovery has concluded, and Defendant now moves for summary judgment.

## II. <u>MATERIAL FACTS</u>

The material facts in this case are those set forth in Defendant's Statement of Material Facts [DE 42] to the extent admitted by Plaintiff, in Plaintiff's Response to Defendant's Statement of Material Facts, and Plaintiff's Statement of Additional Material Facts [DE 47].  For the Court's convenience, and in compliance with Local Civil Rule 7.2(a)(2), Plaintiff will summarize those facts here.

On October 19, 2018, Plaintiff, Robert Jackson, was working as a "stacker" while using a "final roller" at the facility of his employer, Rogers Manufacturing Corp. ("Rogers"), in West Monroe, Louisiana, when he was injured by the final roller.  [DE 47, ¶ 7(a)].  Defendant produced the final roller in 2008.  [DE 47, ¶ 1(a)].  Rogers purchased it used from its prior owner, American Truss, in or about 2012.  [DE 47, ¶ 4(b)].  Rogers never received any operation or instruction manual for the final roller.  [DE 47, ¶¶ 32, 33].

The final roller was used at Rogers as one machine of several in the assembly of trusses. Employees would first hammer metal plates into the trusses and then roll over them with a gantry press.  [DE 47, ¶ 37].  The partially completed trusses were then placed on a conveyor, consisting of a series of "feed" rollers.  [DE 47, ¶ 2(c)].  The trusses then enter the final roller, which further presses the metal plates into the wooden assemblies.  [DE 47, ¶ 38].  The final roller utilizes two metal cylinders to press the metal plates.  [DE 47, ¶ 1(c)].

Defendant's final roller contained a yellow safety bar which when pushed, stopped and reversed the final roller's cylinders. [DE 47, ¶ 39]. The safety bar stuck out maybe six inches from the front of the final roller. [DE 47, ¶ 43]. The only warnings on the machine facing the user and the truss-feed area were two stickers: (1) "CAUTION: DO NOT OPERATE MACHINERY WITHOUT GUARDS," and (2) "DANGER: PINCH POINT. Keep Hands and Feet Clear." [DE 47, ¶ 3(b)].

All the guards installed or designed by Defendant were in place on the final roller on the day of Plaintiff's accident. [DE 47, ¶ 47]. Although Defendant had identified the area in front of the final roller as hazardous, Defendant did not place a label on the final roller warning users of the hazard. [DE 47, ¶ 49].

The warning label on the final roller which stated "CAUTION: DO NOT OPERATE MACHINERY WITHOUT GUARDS," did not warn users of any unguarded hazard when all the guards installed or designed by Defendant were in place on the final roller. [DE 47, ¶ 48]. Similarly, the "DANGER: PINCH POINT; Keep Hands and Feet Clear" label did not warn users who do not volitionally place hands or feet near the machine. [DE 47, ¶ 51].

Defendant's final roller did not contain any guard to prevent Plaintiff from entering the intake area of the front roller. [DE 47, ¶ 50].

Some of the feed rollers which moved the partially completed trusses toward the final roller hadn't been operational for about two days before Plaintiff's accident. [DE 47, ¶ 2(g)]. Defendant has never warned users not to use non-powered feed rollers or conveyors to move products toward its feed roller. [DE 47, ¶ 7(d)]. Moreover, the conveyor which moves trusses toward Defendant's final roller is <u>not</u> a component part of Defendant's final roller. [DE 47, ¶ 54].

Defendant's instruction manual for its final roller -- the manual which never reached Rogers -- contains a diagram indicating areas which a user must stand clear of when the final roller is "active." [DE 47, ¶ 27]. The diagram refers to Zones "A" and "B" but does not include a key indicating what the terms mean or represent or where the final roller appears in the diagram. [DE 47, ¶ 28].

The accident occurred when a long board extending from the truss entered the final roller first. The remaining part of the truss then pushed Plaintiff into the final roller. [DE 47, ¶ 7(e)].

At the time of the accident, Rogers also utilized a final roller made by MiTek. [DE 47, ¶ 44]. The MiTek final roller had a safety bar which formed a "V" which extended in front of the machine, which, together with a chain, prevented users from approaching the truss-feed area of the machine without turning it off. [DE 47, ¶ 45].


[DE 42-1] The final roller.


[DE 47-15 - The MiTek final roller].

Defendant did not design the final roller or the instruction booklet for the machine, instead having taken the design and the booklet from another company. [DE 47, ¶ 10-18].

The parties stipulated that the substantive law of Louisiana applies to this dispute. [DE 32].

## III.  STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, a motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.C.P. 56(a). "[D]isputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

> [T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. . . . . [W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs. . . . .
>
> [S]ummary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

Id.  On summary judgment, the facts themselves, and the inferences to be drawn from them, must be viewed in the light most favorable to plaintiff. Johnson v. Quinones, 145 F.3d 164, 165 (4th Cir. 1998).

"The party moving for summary judgment has the initial burden of informing the court of the basis of the motion and identifying those portions of the record which are believed to show the absence of a genuine issue of material fact." Phillips v. General Motors Corp., 911 F.2d 724 (4th Cir. 1990), citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"We have emphasized repeatedly the drastic nature of the summary judgment remedy and have held that it should not be granted unless it is perfectly clear that there are no genuine issues of material fact in the case." Ballinger v. N.C. Agric, Extension Serv., 815 F.2d 1001, 1004-05 (4th Cir. 1987).

## IV. ARGUMENT

The motion must be denied, because Plaintiff has established a colorable claim of Defendant's liability under the Louisiana Products Liability Act sufficient to withstand summary judgment -- both because of Defendant's dangerous design and Defendant's inadequate warnings.

### A. The Louisiana Products Liability Act

The Louisiana Products Liability Act, La. R.S. § 9:2800.51, *et seq.*, (LPLA), enacted in 1988, is Louisiana's exclusive remedy for the recovery of damages caused by a manufacturer's dangerous or defective products. Green v. BDI Pharmaceuticals, 803 So. 2d 68 (La. App. 2d Cir. 2001). In relevant part, the LPLA provides that

> A. The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity.
>
> B. A product is unreasonably dangerous if and only if:
>
> (1) The product is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55;
>
> (2) The product is unreasonably dangerous in design as provided in R.S. 9:2800.56;
>
> (3) The product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in R.S. 9:2800.57; or
>
> (4) The product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in R.S. 9:2800.58.
>
> C. The characteristic of the product that renders it unreasonably dangerous under R.S. 9:2800.55 must exist at the time the product left the control of its manufacturer. The characteristic of the product that renders it unreasonably dangerous under R.S. 9:2800.56 or 9:2800.57 must exist at the time the product left the control of its manufacturer or result from a reasonably anticipated alteration or

modification of the product.

D. The claimant has the burden of proving the elements of Subsections A, B and C of this Section.

La. R.S. § 9:2800.54.

Under the LPLA,

A product is unreasonably dangerous in design if, at the time the product left its manufacturer's control:

(1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and

(2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.

La. R.S. § 9:2800.56.

As to warnings,

A. A product is unreasonably dangerous because an adequate warning about the product has not been provided if, at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.

B. A manufacturer is not required to provide an adequate warning about his product when:

(1) The product is not dangerous to an extent beyond that which would be contemplated by the ordinary user or handler of the product, with the ordinary knowledge common to the community as to the product's characteristics; or

-7-
Case 5:19-cv-00447-BR   Document 48   Filed 06/01/21   Page 7 of 19

> (2) The user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic.
>
> C. A manufacturer of a product who, after the product has left his control, acquires knowledge of a characteristic of the product that may cause damage and the danger of such characteristic, or who would have acquired such knowledge had he acted as a reasonably prudent manufacturer, is liable for damage caused by his subsequent failure to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.

La. R.S. § 9:2800.57.

The LPLA includes certain protections for manufacturers.

> A. Notwithstanding R.S. 9:2800.56, a manufacturer of a product shall not be liable for damage proximately caused by a characteristic of the product's design if the manufacturer proves that, at the time the product left his control:
>
> > (1) He did not know and, in light of then-existing reasonably available scientific and technological knowledge, could not have known of the design characteristic that caused the damage or the danger of such characteristic; or
> >
> > (2) He did not know and, in light of then-existing reasonably available scientific and technological knowledge, could not have known of the alternative design identified by the claimant under R.S. 9:2800.56(1); or
> >
> > (3) The alternative design identified by the claimant under R.S. 9:2800.56(1) was not feasible, in light of then-existing reasonably available scientific and technological knowledge or then-existing economic practicality.
>
> B. Notwithstanding R.S. 9:2800.57(A) or (B), a manufacturer of a product shall not be liable for damage proximately caused by a characteristic of the product if the manufacturer proves that, at the time the product left his control, he did not know and, in light of then-existing reasonably available scientific and technological knowledge, could not have known of the characteristic that caused the damage or the danger of such characteristic.

La. R.S. § 9:2800.59.

### B. Plaintiff's Use of Defendant's Final Roller Was Reasonably Anticipated by Defendant, As Confirmed by Its Instruction Manual.

In the instant case, Plaintiff alleges Defendant's liability for unreasonably dangerous design and inadequate warning under LPLA sections 9:2800.56 and 9:2800.57, respectively.

Under section 9:2800.54(A), however, before considering questions of defective design or inadequate warning, it must first be determined if the use of the product when it caused injury or damage was a "reasonably anticipated use." If Defendant reasonably anticipated the type of use which injured Plaintiff, Plaintiff has carried its burden on this issue.

The evidence developed in this case confirms that Defendant did indeed anticipate the sort of use in which Plaintiff was engaged when injured, even attempting -- ineffectually -- to warn against it.

"'Reasonably anticipated use' means a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances." La. R.S. § 9:2800.53(7).

> Notably, this definition is narrower in scope than its pre-LPLA counterpart, "normal use," which included "all reasonably foreseeable uses and misuses of the product," . . . but, like "normal use," what constitutes a reasonably anticipated use is ascertained from the point of view of the manufacturer at the time of manufacture. Unlike its "normal use" counterpart, though, the use of the words "reasonably anticipated" effectively discourages the fact-finder from using hindsight.
>
> "Reasonably anticipated use" also effectively conveys the important message that "the manufacturer is not responsible for accounting for every conceivable foreseeable use" of its product. Likewise, knowledge of the potential and actual intentional abuse of its product does not create a question of fact on the question of reasonably anticipated use.

Payne v. Gardner, 56 So. 3d 229, 231 (La. 2011). (Citations and some quotation marks omitted.) "Reasonably anticipated use" means "used for its intended purpose." Despaux v. RSC Equip.

Rental, Inc., 246 So. 3d 806, 813 - 14 (La. App. 4th Cir. 2018).

For a court unfamiliar with Louisiana products law, Despaux is instructive as to the meaning of "reasonably anticipated use." In Despaux, the plaintiff was injured by a collapsing light tower -- the kind of device used by construction crews to illuminate an outdoor area after dark. The manufacturer argued that it could not have reasonably anticipated the plaintiff's use of the light tower, citing what it claimed to be opinions on-point by the Fifth Circuit Court of Appeals.

The state Court of Appeals disagreed. It distinguished the plaintiff's use of the light tower with the facts of the putatively supportive cases, Kampen v. Am. Isuzu Motors, Inc., 157 F.3d 306 (5th Cir. 1998), and Lockart v. Kobe Steel Ltd., 989 F.2d 864 (5th Cir. 1993).

> In Kampen, the plaintiff used a car jack to elevate a car so that he could get underneath and inspect the brakes in direct contravention of the car jack's manufacturer's warning. The car fell on the plaintiff. In Lockart, workers were injured when a pontoon fell. The workers had used an excavator to suspend a heavy pontoon by chaining it to the bucket's teeth in direct violation of the warnings provided in the equipment manual. In both cases, the court found that the warnings were adequate and the violation of the warnings was not a reasonably anticipated use within the meaning of the LPLA.
>
> We find those cases distinguishable because in both cases the products were not being used for their intended purposes. In Kampen, the car jack was not used to change a tire, but rather, used to suspend the car so that the brakes could be examined. Likewise in Lockart, the excavator was being used for something other than excavating. In this case, the light tower was being used for its intended purpose.

Id. at 813.[1] By contrast, in the instant case it is undisputed that Plaintiff was using Defendant's final roller for pressing metal plates into wooden trusses -- *exactly* the use which Defendant anticipated and for which the machine was designed. That something went wrong while Plaintiff

---

[1] Perhaps not surprisingly, Defendant reflexively cites both Kampen and Lockart in its favor.

was using it does not turn Plaintiff's use into something that Defendant could not have reasonably anticipated. Plaintiff was not using the final roller to wring water from laundered clothes. He was using it to construct trusses. Plaintiff was not misusing the machine. Defendant's argument is otherwise unavailing.

Indeed, the warnings which Defendant included in its instruction manual confirm that Defendant *did* anticipate that a user constructing trusses might approach the front, truss-feed area of the machine. Although the instruction manual, with its confusing, poorly explained diagram of Zones A and B, never reached Plaintiff's employer, let alone Plaintiff, it at least confirms that Defendant did anticipate the type of use that injured Plaintiff -- in precisely the manner in which Plaintiff was injured. Defendant essentially concedes the point. In the very first averment in its Statement of Material Facts, Defendant states that "Rand is manufacturer of equipment used to make wooden trusses for building construction."

Defendant further attempts to distract the Court by insisting that Plaintiff was using a "broken" machine, as if the non-operational <u>feed</u> rollers in the conveyor which guided trusses toward the final roller were somehow an integral part of the <u>final</u> roller, the defects of which are now in controversy. Defendant then spins the presence of the non-operational rollers into its artificial "manual/automatic" dichotomy. According to Defendant, but for the non-operational rollers, Plaintiff would have had no reason to approach the final roller and therefore wouldn't have been injured. Thus, Defendant contends, Plaintiff was using a "broken" machine, defeating intended safeguards in violation of OSHA regulations, for a use not reasonably anticipated by its manufacturer, thereby exculpating Defendant.[2]

---

[2] This theory was developed by Defendant's expert Michael Taubitz, whom Plaintiff has separately moved to preclude for lacking the qualifications necessary to testify.

Defendant deserves credit for creativity if not for cogency. In point of fact, there is not a scintilla of evidence that the feed rollers/conveyor were ever a part of the final roller. To the contrary, Richard Watts, Defendant's corporate designee, testified under oath that the conveyor is *not* a component part of Defendant's final roller. [DE 47, ¶ 4]. Moreover, there is no evidence in any of Defendant's materials -- not in its manual nor in its web site -- that begins to suggest that powered feed rollers must be used with the final roller, or that *any* sort of conveyor at all, powered or manual, must be used with the final roller. And even assuming, *arguendo*, that the final roller should have been used with a fully operational powered conveyor but was not -- a premise which Plaintiff rejects -- such use could never qualify as not having been "reasonably anticipated" by Defendant. See Despaux, *supra*. Defendant's argument is akin to a car manufacturer's insistence that its product was not defective because the plaintiff's driveway was cracked. Louisiana defines "reasonably anticipated use" otherwise.

Moreover, Rogers' alleged violation of OSHA regulations has no bearing on the issue of whether Defendant reasonably anticipated the use of non-operational feed rollers. In support for the contrary position, Defendant cites Sistrunk v. Dake Corp., 2015 WL 4164910, 2015 U.S. Dist. LEXIS 89231 (E.D. La. July 9, 2015). In Sistrunk, the plaintiff used a piece of scrap metal as an extension of the ram of the defendant's hydraulic press and attempted to steady the piece as the ram descended upon it. The piece of scrap shot out and injured the plaintiff. In granting the defendant's motion for summary judgment, the court reasoned that the plaintiff's use of the press could not have been reasonably anticipated by the manufacturer, likening the plaintiff's use of the scrap to the misuse of the tire jack by the plaintiff in Kampen, *supra*.

Defendant's citation to Sistrunk is misplaced. Unlike Mr. Sistrunk, Plaintiff in the instant case used Defendant's final roller for the purpose for which it was intended, and no label on the

machine warned Plaintiff not to approach the front of the machine. OSHA regulations on the guarding of machinery by employers do not exculpate a manufacturer from product liability when its product has *not* been put to a novel use, particularly when the manufacturer's own literature confirms that the manufacturer *did* contemplate the type of use which later caused an accident.[3]

In any event, a dispute as to whether a particular use -- not an abuse -- was reasonably anticipated raises a genuine issue of material fact which precludes summary judgment. Walker v. Manitowoc Co., Inc., 259 So. 3d 465, 474 (La. App. 3d Cir. 2018). "Determination of whether a particular use was 'reasonably anticipated' is a question of fact." Scordill v. Louisville Ladder Grp., LLC, 2003 U.S. Dist. LEXIS 19052, *23 (E.D. La. 2003).

On the question of whether Defendant reasonably anticipated Plaintiff's use of the machine, the issue must go to the jury, and the motion must be denied.

### C.  Plaintiff's Evidence of an Alternative Design and Its Feasibility Must Go To The Jury.

Defendant also speciously maintains that Plaintiff cannot carry its burden of showing an alternative design because Plaintiff's proffered alternative design, the safety bar on the MiTek final roller in the Rogers plant, wouldn't have stopped Plaintiff from entering the "restricted area" in front of Defendant's final roller.

For multiple reasons, Defendant's argument is absurd. The safety bar on the MiTek roller would shut off the machine if anyone approached it because it extends outward some distance from the machine. Moreover, the only "restricted area" in front of the machine exists in Defendant's instruction booklet. The diagram of Zones A and B in Defendant's manual never reached Rogers

---

[3] Indeed, this is the very basis for Plaintiff's motion to preclude Defendant's expert, Michael Taubitz, as Mr. Taubitz failed to render any opinions regarding product liability, admitting he was not a product liability expert and thus could only opine as to alleged workplace safety violations by Plaintiff's employer.

or Plaintiff, and the machine itself contained no warnings about a restricted area.

Essentially, Defendant's argument is that its product couldn't possibly be defective, because Plaintiff had committed to defeating any safeguard that Defendant could have included. There is utterly no evidence in this case supporting such an argument. This case is not Sistrunk, nor is it Kampen or Lockart.

With respect to the test for unreasonably dangerous design under R.S. 9:2800.56, "the plaintiff must (1) identify a specific alternative design that existed and was capable of preventing his injury; and (2) perform the requisite risk-utility analysis. An alternative design must be reasonably specific and not based on mere speculation." Gray v. Indus. Plant Maint., 2004 U.S. Dist. LEXIS 14233, *14 (E.D. La. 2004). (Citations omitted.) Plaintiff has complied with these requirements, by identifying the MiTek design -- which actually exists, on the market -- as an alternative design that would have prevented the accident. Plaintiff's expert, Justin Smith, P.E., has confirmed that the risks associated with leaving the final roller as-is are far outweighed by the utility in adopting the alternative design. [DE 47-11].

That Defendant takes issue with Plaintiff's alternative design is of no consequence at this juncture. Whether a manufacturer knew or should have known of an alternative design or its feasibility are questions of fact for the jury. Bush v. J.C. Penney Co., 2004 U.S. Dist. LEXIS 14233, *11 (E.D. La. 2004). More generally, "the question of whether a product is unreasonably dangerous in design is a question of fact." Walker v. Manitowoc Co., *supra*, at 479.

### D. Plaintiff's Evidence of Inadequate Warnings Must Go To The Jury.

Defendant insists that the two warnings on the truss-feed side of the final roller and the warnings in its instruction booklet sufficiently placed Plaintiff on notice of the machine's hazards. Plaintiff strongly disagrees.

Defendant contends that warnings weren't really necessary, because the danger posed by the final roller was obvious to Plaintiff. But in support of its argument, Defendant only cites Plaintiff's testimony about what was racing through Plaintiff's mind *after* the truss started pushing him towards the final roller. Such testimony could hardly be considered evidence of what Plaintiff knew of the machine's dangers before the accident started to unfold.

Defendant has the burden of identifying those portions of the record which are believed to show the absence of a genuine issue of material fact. Phillips v. General Motors Corp., *supra*. As to Plaintiff's alleged awareness of the final roller's hazards, Defendant has failed to carry its burden.

When a machine's inherent danger isn't obvious,

> then the warning, or lack thereof, must be scrutinized. Therefore, the warning must be: (1) properly worded to signify the intensity of the inherent danger in the product; (2) properly placed on the product so that the consumer cannot avoid seeing it; and (3) it must convey to the consumer that injury or damage can result from a normal or intended use of the product.

Warren v. Shelter Mut. Ins. Co., 233 So. 3d 568, 574 (La. 2017). (Citations omitted.) Warning decals which aren't visible to the user, on the side of the machine where the user stands, are, as a matter of law, inadequate. Id., citing Hooker v. Super Products Corp., 751 So.2d 889, 905 (La. App. 5th Cir. 1999).

Plaintiff has produced evidence that Defendant's warnings were inadequate and that some of those inadequate warnings were never communicated to Plaintiff. Although Defendant may disagree, the issue of adequate warnings cannot be resolved on summary judgment. "Whether a product is unreasonably dangerous due to an inadequate warning is a question for the trier of fact. . . ." Warren at 575. Accord Jack v. Alberto-Culver USA, Inc., 949 So. 2d 1256, 1259 (La. 2007) and Walker v. Manitowoc Co., *supra*, at 477.

### E. The Alleged Comparative Fault of Plaintiff or of His Employer Are Irrelevant to Summary Judgment.

In its final argument, Defendant maintains that Plaintiff and/or Rogers were at fault for the accident. Without explanation, Defendant concludes the argument by baldly asserting that reasonable minds could not differ that Plaintiff's actions and Rogers' acts and omissions were the sole "cause" (*sic*) of Plaintiff's injuries.

Reasonable minds could differ. As already discussed, Plaintiff has, in great detail, cited the shortcomings of Defendant's product and of the warnings, or lack of warnings, thereto, by pointing to a feasible, alternative design, by explaining the ineffectiveness of the warnings, and by referring to standards from which Defendant's machine departed. Defendant's insistence upon Plaintiff and Rogers as the sole cause of the accident is all the more fantastic given that Defendant never devised the design of the final roller, or wrote the instruction booklet, but instead pilfered both from another company. Defendant has expended far more effort in casting blame than it has in designing a safe product.

Ultimately, Defendant's argument falls short, because Louisiana follows a system of pure comparative negligence. La.C.C. Art. 2323. Article 2323 allows "a plaintiff to recover some damages even if he is 99 percent responsible for his injuries." Mack v. Kellogg Brown & Root, Inc., 941 So. 2d 54, 59 (La. App. 4th Cir. 2006). And if there were any question as to whether Mr. Jackson had been 99 percent responsible, or 100 percent, or if Rogers bore any fault, it is for the jury to decide.

### V. CONCLUSION

Defendant has given the Court no compelling reason to grant Defendant the drastic remedy of summary judgment, particularly in a case in which genuine issues of material fact abound. If Plaintiff or his employer were responsible for Plaintiff's injuries, or if Defendant's final roller was

not unreasonably dangerous in design or contained sufficient warnings, it is for the jury, not the Court, to say. The motion must be denied.

Respectfully submitted, this the 1st day of June, 2021.

**WHITE AND WILLIAMS LLP**

By: <u>/s/ Robert M. Caplan Esq.</u>
Robert M. Caplan, Esq.
Brett N. Tishler, Esq.
WHITE AND WILLIAMS LLP
1650 Market Street, Suite 1800
Philadelphia, PA 19103
215-864-7012
215-864-6879
caplanr@whiteandwilliams.com
tishlerb@whiteandwilliams.com
*Attorneys for Plaintiff*

<u>/s/ Bobby R. Manning</u>
Bobby R. Manning, Esq.
Manning Law Firm
320 Pine Street
Monroe, LA 71291
318-324-1411
bobby@bobbymanning.com
*Attorneys for Plaintiff*

<u>/s/ Sean T. Partrick Esq.</u>
Sean T. Partrick, Esq.
YATES MCLAMB & WEYHER, LLP
P.O. Box 2889
Raleigh, NC 27602
919.835.0910
spartrick@ymwlaw.com
*Local Civil Rule 83.1(d) Counsel for Plaintiff*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.2(f)(3)(A)

The undersigned hereby certifies that the foregoing **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** complies with the 8400-word limit of Local Rule 7.2(f)(3)(A), as the Memorandum contains 4927 words.

/s/ Sean T. Partrick Esq.
Sean T. Partrick, Esq.
YATES MCLAMB & WEYHER, LLP
P.O. Box 2889
Raleigh, NC 27602
919.835.0910
spartrick@ymwlaw.com
*Local Civil Rule 83.1(d) Counsel for Plaintiff*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** has been electronically-filed in compliance with Rule 5 of the Federal Rules of Civil Procedure and Local Civil Rule 5.1 and served upon the parties as follows:

J. Matthew Little
Daniel T. Strong
Teague Campbell Dennis & Gorham, LLP
4700 Falls of Neuse Road, Suite 450
Raleigh, NC 27601
*Attorneys for Defendant Rand Manufacturing, Inc.*

G. Adam Cossey, Esq.
Hudson, Potts & Bernstein, LLP
1800 Hudson Lane, Suite 300
Monroe, LA 71201
*Pro Hac Vice Attorney for Defendant Rand Manufacturing, Inc.*

/s/ Sean T. Partrick Esq.
Sean T. Partrick, Esq.
YATES MCLAMB & WEYHER, LLP
P.O. Box 2889
Raleigh, NC 27602
919.835.0910
spartrick@ymwlaw.com
*Local Civil Rule 83.1(d) Counsel for Plaintiff*